IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNESTINE WIGGS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 13-5193 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                    **February 26, 2014**

Plaintiff Ernestine Wiggs has brought this employment discrimination action against the City of Philadelphia and Dr. FNU Rosenberg, arising from the City's failure to hire her for a position as a police officer.  The City of Philadelphia has moved to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  For the following reasons, the Motion is granted.

## I.    BACKGROUND

The Amended Complaint alleges the following facts.  Plaintiff is an African American woman who, when she was 50 years old, applied for the position of Police Officer Recruit with the City.  (Am. Comp. ¶¶ 1, 8-9.)  The City has responsibility for testing, hiring, training and supervising employees of the Philadelphia Police Department.  (<u>Id.</u> ¶ 13.)  As part of the job application process, Plaintiff was required to undergo a psychological evaluation conducted by Dr. Rosenberg, a white woman.  (<u>Id.</u> ¶ 9.)  Defendants conducted the psychological evaluation in a manner that was contrary to the standards prescribed by the Uniform Guidelines on Employee Selection Procedures.  (<u>Id.</u> ¶ 10.)  On April 2, 2013, Plaintiff was notified by letter that her application for employment as a Police Officer Recruit had been terminated as a result of her psychological evaluation.  (<u>Id.</u>)  Plaintiff was not given an opportunity for reconsideration or re-

evaluation.  (Id.)  Plaintiff has undergone psychological evaluations conducted by Defendants on two prior occasions.  (Id. ¶ 12.)  Both evaluations were satisfactory.  (Id.)

Plaintiff has been employed by the City as a Police Correctional Officer and Deputy Sheriff since 1995.  (Id. ¶ 11.)  Throughout her employment, she has received satisfactory performance evaluations.  (Id.)  She has also received numerous awards from the City related to her employment, including "Officer of the Month" and "Outstanding Service."  (Id.)  Plaintiff was also given a letter of commendation by Assistant City Solicitor Denise S. Wolf.  (Id.)

The Amended Complaint asserts three claims under federal law:  employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination and Employment Act (Count I); failure to train and supervise pursuant to 42 U.S.C. §§ 1983, 1988 (Count II); and supervisor liability pursuant to 42 U.S.C. §§ 1983, 1988 (Count III).  Count IV of the Amended Complaint asserts four pendant state law claims:  assault, battery, intentional infliction of emotional distress, and violation of Plaintiff's right to due process guaranteed by the Constitution of the Commonwealth of Pennsylvania.

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no

deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"   Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).   The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"   Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556.   In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"   West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Count I

Count I asserts that the City discriminated against Plaintiff based on her race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").   Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   The

ADEA similarly makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  The Amended Complaint does not allege any facts that, if true, would constitute direct evidence of race or age discrimination.[1]  Plaintiff's race and age discrimination claims are therefore analyzed pursuant to the burden shifting framework provided by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 465 (3d Cir. 2005); <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-05.  Under the <u>McDonnell Douglas</u> burden shifting analysis, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  <u>Sarullo v. United States Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003).  If the plaintiff does so, the burden then shifts to her employer to "'articulate some legitimate, nondiscriminatory reason for [her] rejection.'"  <u>Id.</u> (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).  If the employer meets this burden, the burden then shifts back to the plaintiff to "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action."  <u>Id.</u> (citing <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981); <u>McDonnell Douglas Corp.</u>, 411 U.S. at 804).

The City argues that Count I of the Amended Complaint should be dismissed because it fails to allege a facially plausible *prima facie* case of race or age discrimination.  A complaint

---

[1]Direct evidence of discrimination is evidence that "'demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'"  <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 269 (3d Cir. 2010) (quoting <u>Walden v. Georgia-Pacific Corp.</u>, 126 F.3d 506, 513 (3d Cir. 1997)).  "Thus, direct evidence must satisfy two requirements.  First, the evidence must be strong enough 'to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision.  Second, the evidence must be connected to the decision being challenged by the plaintiff."  <u>Id.</u> (quoting <u>Walden</u>, 126 F.3d at 513 and citing <u>Walden</u>, 126 F.3d at 515-16.)

asserting *prima facie* case of employment discrimination in violation of Title VII and the ADEA, must allege facts that, if true, would establish the following elements:

> (1) [the plaintiff] is a member of a protected class; (2) she was qualified for the position sought; (3) she applied and was rejected despite being qualified; (4) under circumstances that raise an inference of discriminatory action, such as that the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position or filled the position with a person not of the plaintiff's protected class.

Royster v. Laurel Highlands Sch. Dist., -- F. Supp. 2d --, 2014 WL 183306, at *5 (W.D. Pa. Jan. 14, 2014) (citing Sarullo, 352 F.3d at 797; Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999)).  As the Third Circuit has explained "'[t]he central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their [protected class].'"  Sarullo, 352 F.3d at 798 (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).

The Amended Complaint alleges that Plaintiff is a member of a protected class in the context of both Title VII and the ADEA as it alleges that she is African American and that she was more than 40 years of age at the time she applied for the job with the City.[2]  (Am. Compl. ¶ 9.)  The Amended Complaint arguably alleges that Plaintiff was qualified for the position of Police Officer Recruit because it alleges that she has been satisfactorily employed as a Police Correctional Officer and Deputy Sherriff since 1995 and that she has twice completed the psychological evaluation with satisfactory results.  (Id. ¶¶ 11-12.)  The Amended Complaint also alleges that Plaintiff applied and was rejected for the position of Police Officer Recruit with the City.  (Id. ¶¶ 8, 10.)  The Amended Complaint does not, however, allege that the City rejected her application for employment "under circumstances that raise an inference of discriminatory

---

[2]The prohibitions on age based discrimination contained in the ADEA are limited to "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

action." Royster, 2014 WL 183306, at *5 (citations omitted). The Amended Complaint does allege that Defendants conducted Plaintiff's psychological evaluation in a manner that had discriminatory intent or disparate impact because it was "conducted contrary to the standards prescribed by the Uniform Guidelines on Employee Selection Procedures." (Am. Compl. ¶ 10.) However, the Amended Complaint does not allege any facts in support of that legal conclusion. We are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. at 286. We conclude that the Amended Complaint thus fails to allege a *prima facie* case of discrimination in violation of Title VII or the ADEA. We further conclude, accordingly, that Count I of the Amended Complaint fails to state a facially plausible claim for relief pursuant to either Title VII or the ADEA. The Motion to Dismiss is, therefore, granted as to Count I of the Amended Complaint.

B.     Counts II and III

Count II of the Amended Complaint asserts a claim against the City for failure to train and supervise pursuant to 42 U.S.C. § 1983. Count III of the Amended Complaint asserts a claim against the City for supervisory liability pursuant to 42 U.S.C. § 1983. Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). Consequently, in order to state a claim for relief pursuant to §

1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423 (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) and Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Counts II and III also assert claims pursuant to 42 U.S.C. § 1988, which provides that the prevailing party in a case brought pursuant to § 1983 may recover reasonable attorney's fees. 42 U.S.C. § 1988(b).

A municipality may only be liable under § 1983 when the alleged transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). Municipal policies include "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, -- U.S. --, 131 S. Ct. 1350, 1359 (2011).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. The Supreme Court has noted that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985)). Consequently, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983.'" Id. at 1359-60 (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)). Similarly, "[a] municipality may be liable for its failure to supervise only if it reflects a policy of deliberate indifference to constitutional rights." Jewell v. Ridley

Twp., 497 F. App'x 182, 186 (3d Cir. 2012) (citing Montgomery v. De Simone, 159 F.3d 120, 126–27 (3d Cir. 1998)).

Deliberate indifference requires "'proof that a municipal actor disregarded a known or obvious consequence of his action.'" Connick, 131 S. Ct. at 1360 (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997)). Consequently, to state a claim for municipal liability under a failure to train theory, a complaint must allege that "city policymakers [were] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." Id. (citing Bryan Cty., 520 U.S. at 410). In order to satisfy this requirement, the complaint must allege "[a] pattern of similar constitutional violations by untrained employees [in order] to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bryan Cty., 520 U.S. at 409). Similarly, in order to state a claim for supervisory liability, a complaint must allege "'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'" C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (2000) (quoting Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997)).

The Amended Complaint alleges that the City deprived Plaintiff of her rights under Title VII (Count II) and the Equal Protection Clause of the Fourteenth Amendment (Count III).[3] (Am. Compl. ¶¶ 22.A., 27.) The Amended Complaint also alleges that the City has been deliberately

---

[3]Count II of the Amended Complaint also states that Plaintiff was "deprived of her rights secured by the United States Constitution pursuant to 42 U.S.C. sec. 1983." (Am. Compl. ¶ 23.) "[T]he first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Kaucher, 455 F.3d at 423 (quotation and footnote omitted). Since Count II of the Amended Complaint does not specify the constitutional right of which Plaintiff was deprived, we conclude that Count II does not state a claim pursuant to § 1983 for the deprivation of a constitutional right.

indifferent to the need for adequate training and supervision of the administration of the psychological evaluation given to Plaintiff and the need to monitor the individuals who administer that psychological evaluation.  (Id. ¶ 22.)  The Amended Complaint, however, does not allege any facts that would establish the manner in which the use of the psychological evaluation violated Plaintiff's rights under Title VII or the Equal Protection Clause.  The Amended Complaint also fails to allege any facts that support its legal conclusion that the City was deliberately indifferent to the need for adequate training and supervision of the administration of the psychological evaluation given to Plaintiff and the need to monitor the individuals who administer that psychological evaluation.

The Amended Complaint further alleges that Charles Ramsey, the Commissioner of the Philadelphia Police Department, sent Plaintiff a letter stating that her application for employment was rejected because of the results of her psychological evaluation, and that he had the duty to prevent the violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.  (Id. ¶¶ 25-27.)  The Amended Complaint however, fails to allege any facts that establish that Commissioner Ramsey was aware that the City's use of the psychological examination violated Plaintiff's rights under Title VII or the Equal Protection Clause.

We conclude that the Amended Complaint thus fails to state facially plausible Section 1983 claims against the City for violation of Plaintiff's rights under Title VII and the Equal Protection Clause pursuant to either the failure to train or supervisory liability theories.  The Motion to Dismiss is, therefore, granted as to Counts II and III of the Amended Complaint.

C.    Count IV

Count IV alleges that "[t]he acts, omissions, and conduct of all defendants in this cause of action constitute assault, battery, intentional infliction of emotional distress, and due process

violations of the Constitution of the Commonwealth of Pennsylvania and state law." The City argues that these state law claims should be dismissed because they are barred by Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. State. Ann. § 8541, *et seq.* (the "Tort Claims Act"). The Tort Claims Act grants broad immunity to local agencies, such as the City, providing that "'no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (quoting 42 Pa. Cons. Stat. Ann. § 8541)). There are eight exceptions to this broad immunity, permitting the imposition of liability for negligence relating to:

> (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in the possession or control of a local agency.

Id. at 315 and n.18 (citing 42 Pa. Cons. Stat. Ann. § 8542). Moreover, there is no exception to the City's immunity for the "'criminal, fraudulent, malicious or willful/intentional misconduct of [its] employee.'" Gallashaw v. City of Philadelphia, 774 F. Supp. 2d 713, 719 (E.D. Pa. 2011) (quoting Hardy v. Big Beaver Falls Sch. Dist., 9 Pa. D. & C. 5th 482, 485 (Beaver Cnty. Court of Common Pleas 2009)); see also Acker v. Spangler, 500 A.2d 206, 207 (Pa. Cmmw. Ct. 1985) (stating that the Tort Claims Act does not create an exception "to the general rule of immunity" for the "willful tortious conduct" of an agency's employees). We agree that none of the exceptions to the City's immunity under the Tort Claims Act apply in this case. We conclude, accordingly, that Count IV should be dismissed for failure to state a facially plausible state law claim against the City upon which relief may be granted.

**IV.     CONCLUSION**

For the foregoing reasons, we grant the City's Motion to Dismiss in its entirety. Although Plaintiff has not sought leave to file a second amended complaint, we grant her leave to amend Counts I, II, and III to state facially plausible claims against the City for violation of Title VII and the ADEA, and for municipal liability under Section 1983.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (stating that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile" (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  However, since the Tort Claims Act provides the City with immunity for the state law claims asserted in Count IV, we conclude that amendment of those claims would be futile and we deny Plaintiff leave to amend Count IV.  If Plaintiff chooses to file a second amended complaint, she must do so no later than March 31, 2014.  An "'application for dismissal of this action may be made if a timely amendment is not forthcoming within that time.'"  Id. (quoting Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000). An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.